FILED
2020 Jun-09 PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| MIKE HARRIS, d/b/a MIKE'S GROCERY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) Case No. 6:18-cv-882-GMB ) ) ) ) ) ) |

## MEMORANDUM OPINION

Pending before the court are the parties' cross motions for summary judgment. Docs. 41 & 44. Plaintiff Mike Harris, doing business as Mike's Grocery, brings this case challenging the United States Department of Agriculture's decision to fine him $33,000 in relation to the sale of his store. Doc. 1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. After consideration of the parties' submissions, the applicable law, and the record as a whole, the court finds that Plaintiff's Motion for Summary Judgment (Doc. 41) is due to be denied, and that Defendants' Motion for Summary Judgment (Doc. 44) is due to be granted.

### I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action

pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The purpose of summary judgement is to separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370

(11th Cir. 1997) (citation omitted).

## III. BACKGROUND

Resolving all factual inferences in Harris' favor, the facts are as follows.

Harris owned and operated a convenience store in Sipsey, Alabama. Doc. 42 at 3. The store sold a limited selection of grocery and household items, including canned goods and produce. Doc. 41-1 at 1. The convenience store, named "Mike's Grocery," participated in the federal government's Supplemental Nutritional Assistance Program ("SNAP"). Doc. 45-1 at 94. The program is administered by the United States Department of Agriculture ("USDA"). Docs. 42 at 3 & 45-1 at 94.

On May 8, 2015, Harris received a letter from the USDA informing him that Mike's Grocery was permanently disqualified from SNAP due to "trafficking violations." Doc. 45-1 at 49. "Trafficking" refers to "the buying, selling, or stealing of SNAP benefits . . . for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. § 271.2. Harris sought administrative review of the USDA's decision, and the agency informed him on September 9, 2015 that "there [was] sufficient evidence to support a finding that a permanent disqualification from participating as an authorized retailer in the Supplemental Nutrition Assistance Program . . . was properly imposed." Doc. 45-2 at 2. Harris, disagreeing with the agency's decision, decided to appeal in federal court. Doc. 41-1 at 2. He filed his case on October 9,

2015. *See* Doc. 1 in *Harris v. U.S. Dep't of Ag., et al.*, 6:15-cv-1771-TMP (N.D. Ala. Oct. 9, 2015) ("*Harris I*").

During the litigation of *Harris I*, Harris was in bad health and approaching 70 years old, motivating him to sell his convenience store. Doc. 41-1 at 2. The new owner of the store applied to participate in SNAP, but the USDA withdrew his application after he failed to provide certain supplemental information during the application process. Docs. 45-3 at 4 & 52 at 27. Harris had told his attorney that he would be willing to dismiss his lawsuit if the new owner (assuming he was legitimately qualified) was approved to participate in SNAP. Doc. 45-3 at 3. The lawyers involved in *Harris I* were the same as the attorneys of record in this case: Thomas Carmichael representing Harris and the United States Attorney for the Northern District of Alabama representing the federal defendants.[1] Carmichael passed Harris' message along to the Assistant United States Attorney assigned to the case, Richard O'Neal. Docs. 45-1 at 3 & 45-3 at 3.

On November 14, 2017, O'Neal emailed Carmichael to inform him that the

---

[1] Defendants argue that Sonny Perdue, Peggy Fouts, and the USDA should be dismissed for lack of subject-matter jurisdiction. Docs. 44 & 46. This is because, Defendants argue, the United States is the only party that can be sued pursuant to 7 U.S.C. § 2023(a)(13). Doc. 46 at 19. Section 2023(a)(13) states that if a party "feels aggrieved by such final determination, it may obtain judicial review thereof by filing a complaint against the United States." Plaintiff does "not object to dismissal of the other defendants as party defendants so long as consideration of the merits of the parties' respective contentions is not affected by or prejudiced by such dismissal" and the United States remains a party. Doc. 49 at 4. The dismissal of Perdue, Fouts, and the USDA does not affect the outcome of this decision. Accordingly, with Plaintiff's consent, it is ORDERED that the claims against those Defendants are DISMISSED.

5

new owner's SNAP application now had been approved. Doc. 41-1 at 9. O'Neal also attached a proposed stipulation of dismissal of *Harris I*. Doc. 41-1 at 9. On January 8, 2018, the parties filed the joint stipulation of dismissal and the court dismissed the case. *See* Docs. 31 & 32 in *Harris I*.

On March 5, 2018, the USDA sent Harris a letter assessing a $33,000 Transfer of Ownership Civil Money Penalty ("TOCMP") against him. Doc. 45-1 at 121. The TOCMP penalized Harris for selling his store after it had been disqualified from SNAP. Doc. 45-1 at 121. The letter instructed Harris on how to pay the penalty and told him that he could request administrative review of the TOCMP. Doc. 45-1 at 121. Harris did so, failed to obtain relief, and filed the instant lawsuit. Doc. 1.

The dispute in this case boils down to whether the *Harris I* settlement prohibited the USDA from imposing a TOCMP against Harris. The parties did not execute a written settlement agreement in *Harris I*. Doc. 45-3 at 6. Harris claims that he would not have agreed to the dismissal of *Harris I* without reassurances from the USDA that Mike's Grocery would continue to operate under new ownership without penalty to either the business, Harris, or the new owner. Doc. 42 at 6. The USDA counters that there was never any discussion or agreement about whether a TOCMP would be imposed as a result of Harris' sale of the store. Doc. 48 at 2 & 7. Similarly, in his sworn declaration, Harris admits that the settlement agreement "never contemplated" the potential for an assessment of a TOCMP. Doc. 41-1 at 5.

A series of emails exchanged between Carmichael and O'Neal leading up to the settlement do not discuss a TOCMP but do reveal that O'Neal was aware of Harris' decision to sell Mike's Grocery. Doc. 49-1 at 4 (recounting O'Neal's understanding from a recent conversation "that Harris was considering the possibility that he would not continue to operate the store [and] was considering selling the business to a third party"). For example, on December 14, 2016, O'Neal sent Carmichael an email asking, "Any progress?" Doc. 49-1 at 5. Carmichael responded that

> Mr. Harris believes that he can sell the property within 30 days. He couldn't actually market the property prior to this potential outcome due to the restrictions that are currently in place related to SNAP. I told him to proceed with negotiating the sale.

Doc. 49-1 at 5.

In the instant case, Harris has moved for summary judgment, arguing that the TOCMP is contrary to the parties' agreement in *Harris I* and is arbitrary and capricious. Doc. 42 at 9–10. Defendants, arguing that the imposition of the TOCMP was proper, also move for summary judgment. Doc. 46 at 3.

### IV.  DISCUSSION

"Title 7, United States Code, Section 2023 confers jurisdiction on the Court to conduct a *de novo* review of the USDA's decision." *Hanaina Ent., Inc. v. United States*, 806 F. Supp. 261, 262 (S.D. Fla. 1992). The Administrative Procedure Act, or the APA, provides that a court may overturn a federal agency decision only if the

decision is arbitrary, capricious, an abuse of discretion, or otherwise not contrary to law. *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996) (citing 5 U.S.C. § 706(2)(A)).  The court cannot substitute its judgment for that of the agency. *See Mahon v. U.S. Dep't of Ag.*, 485 F.3d 1247, 1253 (11th Cir. 2007).  "Instead, [the court] must look to see 'whether an agency's decision was based on consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quoting *Sierra Club v. Johnson*, 436 F.3d 1269, 1273–74 (11th Cir. 2006)).  The arbitrary and capricious standard "is extremely deferential," *Rice*, 85 F.3d at 541, and turns on whether a section "is unwarranted in law or without justification in fact." *Hanaina Ent., Inc.*, 806 F. Supp. at 263.

**A.     The Settlement Agreement**

General principles of contract law govern the interpretation of settlement agreements. *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000).  Typically, the "construction and enforcement of settlement agreements are governed by principles of the state's general contracts law." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985).  But, occasionally, "federal courts have enforced oral settlement of federal claims under principles of federal common law." *Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1279 (M.D. Ala. 2011).  "On other occasions, federal courts have applied state contract law to interpret settlement agreements even when a plaintiff's claims derive from federal statutes." *Id.*  In this

8

case, the court need not decide whether federal law or state law applies because the result is the same either way: there was no agreement foreclosing future monetary penalties.

"[I]t is a fundamental principle of contracts that in order for a contract to be binding and enforceable, there must be a meeting of the minds on all essential terms and obligations of the contract." *Browning v. Peyton*, 918 F.2d 1516, 1521 (11th Cir. 1990). This is true regardless of whether a settlement agreement is formed under state or federal law. *See Hogan*, 821 F. Supp. 2d at 1279–1281 (noting that there must be a meeting of the minds on all essential terms and obligations under both federal and state law); *Ex parte Meztista*, 845 So. 2d 795, 797 (Ala. 2001) (noting that a meeting of the minds is required under Alabama law). "The moving party must establish a meeting of the minds or mutual or reciprocal assent to a certain and definite proposition." *Rolex Watch U.S.A., Inc. v. Bonney*, 546 F. Supp. 2d 1304, 1307 (M.D. Fla. 2008). "To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *Id.* "A trial court's finding of a meeting of the minds must be supported by competent substantial evidence." *Id.*

Here, there was a meeting of the minds on all essential elements of the settlement agreement: namely, that Harris would dismiss his claims in *Harris I* if the new owner of Mike's Grocery was approved to participate in SNAP. In his affidavit,

O'Neal declared that Carmichael told him that Harris would agree to dismiss the case if the USDA would approve the new owner of Mike's Grocery as a SNAP participant. Doc. 45-3 at 3. Harris, echoing this agreement, frames the settlement agreement as "a compromise: I would not continue to oppose the USDA's disqualifications of 'me' being able to participate in the SNAP program if the USDA would allow [the new owner], assuming he legitimately qualified, to participate in SNAP." Doc. 41-1 at 3–4. On November 14, 2017, O'Neal told Carmichael that the new owner had been approved as a SNAP retailer, and sent Carmichael a stipulation of dismissal. Doc. 41-1 at 9. Carmichael told O'Neal that he wanted to speak with Harris before filing the stipulation but that he thought they could move forward with dismissal. Doc. 41-1 at 16. On January 8, 2018, the parties executed and filed a joint stipulation of dismissal, and the court dismissed the case. Doc. 45-3 at 6.

The is no evidence before the court that a prohibition against monetary penalties was an essential element of the parties' agreement. By Harris' own admission, the parties never contemplated a TOCMP and therefore a waiver of a TOCMP could not have been a component of the settlement. *See Bonney*, 546 F. Supp. 2d at 1307 ("The moving party must establish a meeting of the minds or mutual or reciprocal assent to a certain and definite proposition."). The Eleventh Circuit's opinion in *Wong v. Bailey*, 752 F.2d 619 (11th Cir. 1985), is instructive here. The plaintiff in *Wong* sued the defendant after being struck by a vehicle

operated by the defendant and owned by the defendant's father. *Id.* at 620. The defendant's insurance carrier offered the plaintiff the $15,000 policy limit in full and complete settlement of the suit. *Id.* The plaintiff's attorney orally agreed to the settlement offer. *Id.* Later, defense counsel sent the plaintiff's attorney a letter including a settlement draft, a release of all claims, a stipulation of dismissal, and an affidavit and hold harmless agreement. *Id.* The plaintiff's attorney told defense counsel that a general release clause included in the proposed agreement was unacceptable because it did not contain the necessary language to preserve the plaintiff's right to claim underinsurance benefits. *Id.* The parties were unable to agree about the language of the release, and the plaintiff's counsel told defense counsel that they could not consummate the agreement. *Id.* The defendant sued to enforce the settlement. *Id.* The district court granted summary judgment to the defendant, finding that the settlement agreement was valid and "that the need for the inclusion of the language necessary to preserve [underinsured benefits] rights . . . was not discovered until after the settlement agreement was reached." *Id.*

The *Wong* plaintiff appealed and the Eleventh Circuit affirmed the district court, concluding that there was no genuine issue of material fact. *Id.* at 621. On appeal, the plaintiff did not dispute that an oral agreement to settle the case had been reached. *Id.* However, she argued that the parties had not reached an agreement on certain terms of the settlement since they had not discussed the language of the

release, and that therefore there was no meeting of the minds on the agreement as a whole. *Id*. The court determined that the "meeting of the minds on this issue is irrelevant to the question of the existence of a valid, enforceable settlement agreement" because the plaintiff's counsel did not discover the need for the underinsured benefits language until after he orally agreed to settle, and thus he could not have "contemplated" the need for the inclusion of that language. *Id*. Finding the debate over the release clause irrelevant to whether the parties entered into a binding settlement agreement, the court affirmed the district court's decision upholding the validity of the settlement agreement. *Id*.

Similarly, because Harris was not aware of the possibility of a TOCMP until after the dismissal of *Harris I*, he did not ask to include a term relating to monetary penalties in the settlement agreement. Harris maintains that he "would not have consented to a dismissal of the case without the reassurance that Mike's Grocery would continue to operate under new ownership without penalty to either the business, Harris, or the new owners." Doc. 42 at 6. But the record evidence belies this claim. As mentioned above, Harris framed the settlement as "a compromise: I would not continue to oppose the USDA's disqualifications of 'me' being able to participate in the SNAP program if the USDA would allow [the new owner], assuming he legitimately qualified, to participate in SNAP." Doc. 41-1 at 3–4. Plainly the terms of this compromise did not address the USDA's ability to assess a

lawful monetary penalty. And Harris' declaration confirms that there was no discussion of a monetary penalty between the parties in noting that "[t]he USDA never made any mention that it was going penalize me $33,000 after it approved [the new owner]." Doc. 41-1 at 6.

Even Harris' own briefing undermines his assertion that he would not have consented to the dismissal without reassurances that a penalty would not be imposed. For example, in his response to the USDA's motion for summary judgment, Harris argues:

> This civil administrative money penalty that the USDA subsequently assessed against Harris was not mentioned as part of the parties' agreement to dismiss *Harris I*. Harris would not have consented to a dismissal of *Harris I* had he known or even suspected of this.

Doc. 49 at 3. Finally, in his declaration, Harris admits that "[o]ur agreement never contemplated any assessment of a transfer ownership civil money penalty." Doc. 41-1 at 5. If Harris did not know about the TOCMP and the parties did not contemplate the TOCMP before the dismissal of *Harris I*, then a TOCMP prohibition cannot have been a component of the settlement agreement. Under these circumstances, the straightforward application of *Wong* leads to the conclusion that the parties reached an oral agreement to dismiss the claims in *Harris I* that did not include a term relating to the USDA's authority to assess a future TOCMP against Harris.

**B.     Validity of the TOCMP**

Having found that the *Harris I* settlement did not preclude the USDA from

13

assessing a TOCMP against Harris, the court concludes that the decision to impose the TOCMP was not arbitrary or capricious because it was not "unwarranted in law" or "without justification in fact." *See Hanaina Ent., Inc.*, 806 F. Supp. at 263. Federal regulations provide that "in the event any retail food store or wholesale food concern that has been disqualified . . . is sold . . . , the person or persons who sell or otherwise transfer ownership of the retail food store or wholesale food concern shall be subjected to a civil penalty." 7 U.S.C. § 2021(e)(1).  Here, it is undisputed that Mike's Grocery was disqualified from SNAP. Doc. 45-1 at 49.  It also is undisputed that Harris sold Mike's Grocery to a new owner. Doc. 41-1.  Therefore, it was appropriate to impose a TOCMP on Harris in accordance with the applicable federal regulations.  Having already found that the settlement agreement did not impact Harris' eligibility for a future TOCMP, the court finds that the USDA's decision to impose a TOCMP on Harris was justified in fact and consistent with the law. Accordingly, the assessment of the TOCMP was not arbitrary or capricious.

Because the *Harris I* settlement agreement did not include an essential term prohibiting the TOCMP, and because the imposition of the TOCMP was not arbitrary and capricious, Harris' motion for summary judgment is due to be denied and the Government's motion for summary judgment is due to be granted.

## V. CONCLUSION

For these reasons, it is ORDERED that Plaintiff's Motion for Summary

Judgment (Doc. 41) is DENIED, and that Defendants' Motion for Summary Judgment (Doc. 44) is GRANTED.

A final judgment will issue separately.

DONE and ORDERED on June 9, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE